**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOORE EYE CARE, P.C., et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| | : | |
| **SOFTCARE SOLUTIONS INC., et al.,** | : | **NO. 15-5290** |
| | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

STENGEL, C. J.                                             **August 31, 2017**

## I.     INTRODUCTION

In this case, plaintiffs Moore Eye Care, P.C. and Eye Services, MSO (collectively,

"Moore Eye") filed suit against SoftCare Solutions, Inc. ("SoftCare"), QHR

Technologies, Inc. ("QHR"), William Dagher, and Medical Transcription Billing, Corp.

("MTBC") for breach of contract and fraud.  Moore Eye settled with SoftCare, QHR, and

Dagher, leaving only its breach of contract claims against MTBC.  MTBC filed cross-

claims for indemnification against SoftCare and counter-claims for breach of contract,

quantum meruit, unjust enrichment, and fraud against Moore Eye.[1]  SoftCare filed

counter-claims against MTBC.

There are currently two outstanding motions filed by cross-claimant MTBC in its

suit against cross-defendant SoftCare.  The first is a motion to amend its cross-claims to

_____

[1] Doc. No. 11.

1

include a claim for fraud (Doc. No. 50) and the second is a motion for leave to file an answer to SoftCare's counterclaims and withdraw MTBC's admissions (Doc. No. 55).[2]

## II.    FACTUAL & PROCEDURAL BACKGROUND[3]

Moore Eye provides medical and surgical services to patients in the specialty of ophthalmology.  In August 2012, Moore Eye contracted with William Dagher, the president of i-Plexus Solutions, Inc., to handle Moore Eye's medical insurance billing. This contract took effect on January 1, 2013.  i-Plexus grossly mishandled Moore Eye's medical insurance billing, placing Moore Eye on the verge of financial collapse.

In early 2014, Moore Eye was contacted by QHR, who informed Moore Eye that Dagher had been terminated but QHR would continue performing i-Plexus's contract. QHR also grossly mishandled Moore Eye's billing, causing Moore Eye to lose the ability to collect on many of its medical claims.

Due to i-Plexus and QHR's mishandling of Moore Eye's medical billing needs, Moore Eye refused to pay its monthly fees to i-Plexus and QHR.  QHR told Moore Eye that it would write off the entirety of the outstanding balances otherwise due from Moore Eye to QHR through the end of 2014 as a good faith gesture.  However, instead of

---

[2] MTBC's in-house counsel, who was responsible for the case, terminated his employment with MTBC on May 13, 2016.  See Doc. Nos. 33 and 34.  MTBC was without in-house litigation counsel until September 6, 2016.  See Doc. No. 55.  MTBC did not file a timely response to SoftCare's counterclaims.

[3] These facts are taken from Moore's Complaint (Doc. No. 1), MTBC's Motion to Amend its Cross-Claims (Doc. No. 50), and Shruti Patel's Certification in Support of MTBC (Doc. No. 55-3).

writing off the Moore Eye receivable, QHR secretly sold it to MTBC without notice to Moore Eye.

In its negotiations with MTBC, QHR and its subsidiary, SoftCare, represented to MTBC that the relationship with Moore Eye was strong and free of controversy, that Moore Eye was satisfied with the services provided by SoftCare and QHR, that the Moore Eye receivable was valid and collectable, that the only reason for the delay in payment by Moore Eye to QHR was a lack of focus to collect the same and limited effort would be required to cause Moore Eye to bring the account to date, and that SoftCare had not breached its contract with Moore Eye.

On July 10, 2015, QHR, via SoftCare, sold the Moore Eye receivable to MTBC. The Asset Purchase Agreement signed by the parties expressly disclaims any representations or warranties relating to the purchased assets other than set forth in the agreement and states that the purchased assets were being purchased and sold "as is, where is".[4]

On July 14, 2015, MTBC notified Moore Eye that it had acquired i-Plexus from QHR and would be assuming responsibility for the medical billing contract. MTBC then issued bills to Moore Eye for services rendered dating back to 2013, despite QHR having informed Moore Eye that those amounts had been written off.

On August 11, 2015, MTBC informed Moore Eye that it was terminating all services effective August 14, 2015. Its unilateral termination of services caused further

_____

[4] Asset Purchase Agreement (Doc. No. 51, Ex. A, § 3.3).

injury to Moore Eye, as Moore Eye did not have the information it needed to take over the billing process.

On August 14, 2015, Moore Eye filed a Complaint in the Pennsylvania Court of Common Pleas, Delaware County. Defendants removed the action to the Eastern District of Pennsylvania on September 23, 2015. On October 29, 2015, MTBC filed an Answer to the Complaint, as well as Counterclaims against Moore Eye and Cross-Claims against SoftCare. Moore Eye filed an answer to MTBC's Counterclaims on February 29, 2016. Judge Dalzell stayed SoftCare's obligation to respond to MTBC's Cross-Claims pending finalization of settlement discussions. On March 23, 2016, Moore Eye settled with QHR, SoftCare, and William Dagher. On April 20, 2016, SoftCare filed a motion to dismiss MTBC's Cross-Claims. Judge Dalzell denied this motion on July 11, 2016.

Beginning June 30, 2016, MTBC was without in-house litigation counsel, although MTBC continued to be represented by local counsel, whose primary purpose was to serve as *pro hac vice* sponsor for MTBC's in-house counsel.[5] A Rule 16 conference was held on July 20, 2016, and was attended by MTBC's local counsel, Jonathan Huerta ("Huerta"). Huerta informed Judge Dalzell that he was not lead counsel and that MTBC was currently without in-house litigation counsel. Judge Dalzell issued an order allowing MTBC to file a motion for leave to amend its cross-claims by September 1, 2016. He also referred the case to Judge Hart for settlement proceedings.

On July 25, 2016, SoftCare filed an Answer to MTBC's Cross-Claims and asserted Counterclaims against MTBC. Huerta forwarded the documents to MTBC's

---

[5] MTBC is not otherwise represented by outside counsel.

senior corporate counsel, Shruti Patel ("Patel"). MTBC did not file an Answer to SoftCare's Counterclaims. On August 8, 2016, SoftCare served its request for admissions and interrogatories. MTBC did not respond to the request before September 7, 2016, and so the matters were admitted under Rule 36(a)(3) of the Federal Rules of Civil Procedure.

On August 29, Huerta informed Patel that the deadline to file a motion to amend was approaching. Patel requested that Huerta prepare a Motion to Amend on behalf of MTBC, even though it was outside the scope of Huerta's role as *pro hac vice* sponsor. Huerta agreed and filed the motion to amend MTBC's cross-claims on September 1, 2016 (Doc. No. 50). On September 6, 2016, MTBC hired new in-house litigation counsel, Melissa Paget ("Paget"). Her application to be admitted *pro hac vice* was filed on September 12, 2016, and approved on September 8, 2016. On September 30, 2016, MTBC filed a motion for leave to file an answer to SoftCare's Counterclaims and to withdraw its admissions (Doc. No. 55).

On October 5, 2016, the parties appeared before Judge Hart for a settlement conference. In the conference, both Moore Eye and SoftCare expressed a desire to settle, but MTBC told Judge Hart that it was not willing to accept any settlement where it had to pay money to another party. The parties were unable to reach an agreement. On November 10, Judge Dalzell ordered the parties to submit supplemental briefing regarding choice-of-law for MTBC's motion to amend its cross-claims. Both parties submitted these briefs on November 23, 2016. The motions are fully briefed and ripe for disposition.

## III. DISCUSSION

MTBC has moved to amend its cross-claims against SoftCare. The core of MTBC's amendments to its cross-claims is an additional claim for fraud in the inducement. MTBC asserts that SoftCare made false representations to MTBC about the health of the assets, namely the Moore Eye receivable, which induced MTBC to sign the contract. SoftCare opposes MTBC's motion, arguing that the motion should fail that the amendment is futile because it fails to state a claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A. *Legal Standard – Motion to Amend*

When deciding a motion for leave to amend a pleading under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a court should "freely give leave when justice so requires." A court may exercise its discretion to deny a Rule 15(a) motion when 1) the moving party has demonstrated undue delay, bad faith or dilatory motives, 2) the amendment is futile, or 3) the amendment would prejudice the other party. United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (internal citation omitted).

An amendment is futile if the complaint, as amended, fails to state a claim upon which relief can be granted. Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010). In assessing futility, a court applies the same standard of legal sufficiency as applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The Third Circuit has laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).

Because the Amended Cross-Claims asserts a claim for fraud, it is also futile if it fails to conform to Federal Rule of Civil Procedure 9(b), which requires that parties plead fraud with particularity. Under Rule 9(b), a plaintiff alleging fraud must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)). To satisfy this standard, the plaintiff must plead the date, time and place of the alleged fraud, allege who made a misrepresentation to whom and the general content of the misrepresentation, or otherwise inject precision or some measure of substantiation into a fraud allegation. Id.; Higgins v. Frank Bonin Funeral Parlor, 629 Fed.Appx. 168, 172 (3d Cir. 2015) (citing Lum, 361 F.3d at 223-24). In applying Rule

9(b), a district court must keep in mind "the general simplicity and flexibility contemplated by the rules" and should not focus "exclusively on the particularity language". Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983). The purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

### B. *Motion to Amend Analysis*

#### 1. Whether MTBC has Met the Heightened Pleading Requirement of Rule 9(b)

SoftCare argues that MTBC's motion should be denied because MTBC has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, SoftCare argues that MTBC has failed to provide a date or time for any of the alleged representations and does not specify which individuals made the representations, where they were made, or whether they were made in writing or orally. MTBC replies that it has pled specific false statements made by SoftCare, such as:

- The Moore Eye Receivable was $260,097.24 as of April 30, 2015 and constitutes a valid obligation of Moore Eye to SoftCare;

- Moore Eye had neither advised SoftCare that Moore Eye believed SoftCare had violated any applicable statute or regulation, nor threatened to assert any claims against SoftCare;

- SoftCare's relationship with Moore Eye was strong and free of controversy;
- Moore Eye was satisfied with the quality of the billing services being provided by SoftCare;

- The Moore Eye Receivable was valid and collectable;

- The only reason for delay in payment by Moore Eye was a lack of focus to collect on the accounts, and limited effort would be required to bring the account to date; and

- SoftCare Solutions had not breached its contract with Moore Eye.

MTBC also incorporates allegations made in Plaintiff's Complaint against SoftCare.

While pleading the date, time, and place of the allegedly fraudulent representations is one way to satisfy Rule 9(b), parties may also satisfy Rule 9(b) by alleging who made a misrepresentation to whom and the general content of the misrepresentation, or by otherwise injecting precision or some measure of substantiation into the fraud allegation. Frederico, 507 F.3d at 200 (citing Lum, 361 F.3d at 223-24). Since MTBC has pled the general content of the misrepresentation made by SoftCare to MTBC, as well as provided specific statements with enough precision that SoftCare is on notice of the conduct with which they are charged, MTBC has satisfied Rule 9(b)'s heightened pleading requirement.

### 2. Whether the Fraud Claim is Futile under Rule 12(b)(6)

SoftCare contends that MTBC fails to state a claim upon which relief can be granted because MTBC is barred from bringing a fraud claim under the Asset Purchase Agreement, which provides that indemnification is the sole remedy available to either party with respect to the Agreement. However, if MTBC is able to successfully bring a claim for fraud in the inducement, they will not be restricted to indemnification as their sole remedy, because a finding of fraud will void the contract between the two parties.

Therefore, the important issue here is whether MTBC is able to establish the elements of fraud.[6]

### *a.    Choice of Law*

In the briefs submitted, both parties assumed that Pennsylvania law would be applied.  Neither MTBC nor SoftCare, however, is a Pennsylvania citizen.  MTBC is a Delaware corporation with its principal place of business in New Jersey, and SoftCare at the time of contracting was a Nevada corporation with an office in British Columbia, Canada.  The contract between the two parties is governed by British Columbia law.  At the request of Judge Dalzell, the parties submitted supplemental briefing on choice of law.  Judge Dalzell requested this briefing because he was not sure how British Columbia law would impact the case.

The choice of law provision in the Asset Purchase Agreement between MTBC and SoftCare reads:

> This Agreement and each of the documents contemplated by or delivered under or in connection with this Agreement (to the extent no choice of law is specified therein) will be governed by and construed in accordance with the Laws of the Province of British Columbia and the federal laws of Canada applicable therein (without reference to conflicts of laws principles).

Doc. No. 51, Ex. A § 1.12.  Pennsylvania upholds choice of law provisions in contracts but generally does not apply that choice of law to tort claims related to the contract.  See Broederdorf v. Bacheler, 129 F.Supp.3d 182, 191 (E.D. Pa. 2015) ("A contract's choice

---

[6] If MTBC cannot state a claim for fraud, they will only be able to sue SoftCare for breach of contract, in which case indemnification would be the sole remedy available to MTBC.

of law provisions 'do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship.'") (citing Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc., 848 F.Supp. 569, 576 (E.D. Pa. 1994)). Because the provision does not extend past the agreement or documents related to the agreement, we should not read it to embrace all aspects of the legal relationship between MTBC and SoftCare such that British Columbia law would be applied to any tort claims, such as fraud.

In their supplemental briefs, MTBC requested that the Court apply Pennsylvania law, while SoftCare argued that New Jersey law should be applied.[7] MTBC focuses its arguments on whether different jurisdictions would allow it to amend its Cross-Claims.[8] SoftCare compares New Jersey law with Delaware law and Nevada law and argues that because there are true conflicts, New Jersey is the state with more significant contacts. SoftCare does not compare New Jersey law with Pennsylvania law, but does include a footnote arguing that even if the Court applies Pennsylvania law, MTBC's fraud claim is barred.

### 1. Pennsylvania Choice-of-Law Principles

A federal court sitting in diversity must apply the choice-of-law rules of the state in which the court sits. Chin v. Chrysler, LLC, 538 F.3d 272, 278 (3d Cir. 2008) (citing Klaxon Co. v. Stentor Elc. Mfg. Co., 313 U.S. 487, 496 (1941)). Pennsylvania employs a

---

[7] I suspect that counsel wanted to avoid arguing Canadian law.

[8] These arguments are irrelevant because the Federal Rules of Civil Procedure determine whether a party can amend its pleadings.

"flexible rule" which combines the "significant contacts" analysis of Restatement

(Second) of Conflict of Laws § 145 and a "governmental interest analysis." See Griffith

v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964). Pennsylvania's choice-of-law

analysis asks three questions: 1) is there an actual conflict or a false conflict between

potentially applicable states' laws, 2) if there is an actual conflict, is there a "true

conflict" based on the governmental interests underlying each law, and 3) if there is a

"true conflict," which state has more significant contacts and a greater interest in its law

being applied. See Specialty Surfaces Intern., Inc. v. Continental Cas. Co., 609 F.3d 223,

229-36 (3d Cir. 2010); Hammersmith v. TIG Ins. CO., 480 F.3d 220, 229-36 (3d Cir.

2007).

### 2. No Actual Conflict Exists between Pennsylvania and New Jersey Law

Because the Asset Purchase Agreement between MTBC and SoftCare contains a

provision explicitly disclaiming any representations or warranties relating to the

Purchased Assets other than as set forth in the Agreement, MTBC must rely on parol

evidence in order to establish a case for fraudulent inducement. As explained below,

there is no actual conflict between New Jersey and Pennsylvania's definition of

fraudulent inducement or parol evidence rule. Because there is no actual conflict, the

Court should apply the law of Pennsylvania.

### a. Fraudulent Inducement

To establish a claim for fraudulent inducement under New Jersey law, the plaintiff

must show a misrepresentation of material fact; knowledge or belief by the defendant of

its falsity; intent that the plaintiff rely on the misrepresentation; and reasonable reliance thereon by the plaintiff.   State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 681 (D.N.J. 2009) (citing Jewish Center of Sussex County v. Whale, 86 N.J. 619, 623 (1981).  Similarly, under Pennsylvania law, a fraudulent inducement claim must show a representation; material to the transaction at hand; made falsely with knowledge or recklessness as to its truth; with the intent of misleading another into relying on it; justifiable reliance on the misrepresentation; and resulting injury.  Broederdorf v. Bacheler, 129 F.Supp.3d 182, 198 (E.D. Pa. 2015) (citing Freeman v. Pittsburgh Glass Works, LLC, 709 f.3d 240, 256-57 (3d Cir. 2013). Pennsylvania does have an additional element of requiring proof of injury, but otherwise the definitions are virtually the same.  Both states require that the plaintiff prove reasonable or justifiable reliance on the misrepresentations.

### b.  *Parol Evidence Rule*

Both New Jersey and Pennsylvania prohibit the use of parol evidence in this case. New Jersey prohibits parties from introducing parol evidence of misrepresentations when an agreement contains an integration clause and the misrepresentations directly relate to the express terms of the agreement.  RNC Systems, Inc. v. Modern Technology Group, Inc., 861 F.Supp.2d 436, 454-55 (D.N.J. 2012) (holding that misrepresentations made prior to executing the contract "relate directly to the express terms of the [Agreement] and should not be used to support a fraudulent inducement claim.").  See also CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F. Supp. 2d 141, 155 (D.N.J. 2013) ("[W]here an agreement contains an integration or merger clause, the parol

evidence rule 'prohibits the introduction of evidence that tends to alter an integrated written document.'") (citing <u>Conway v. 782 Corporate Ctr. Assocs.</u>, 187 N.J. 259, 268 (2006)).

Pennsylvania likewise prohibits parties from introducing parol evidence of misrepresentations made prior to signing when the agreement contains an integration clause and contains terms directly dealing with the subject matter of the alleged representation.  <u>Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners</u>, 647 F.Supp.2d 474, 489 (E.D. Pa. 2009) (citing <u>1726 Cherry St. P'ship v. Bell Atlantic Props., Inc.</u>, 653 A.2d 663, 666 (Pa. Super. Ct. 1995); <u>see also</u> <u>Youndt v. First Nat. Bank of Port Allegany</u>, 868 A.2d 539, 546 (Pa. Super. Ct. 2005) ("[T]he case law clearly holds that a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations.") (citing <u>Blumenstock v. Gibson</u>, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002)).

Accordingly, there is no conflict between the application of the parol evidence rule under Pennsylvania and New Jersey law.  The Court does not need to continue with the conflict of laws analysis, and should apply the law of Pennsylvania. <u>See</u> <u>Com. v. Roberts</u>, 969 A.2d 594, 599 (Pa. Super. Ct. 2009) ("Where there is no actual conflict between the laws of Pennsylvania and those of another state, any interest that the sister-state may have in the transaction is rendered moot by that lack of conflict.") (citing Com. v. Eichinger, 591 Pa. 1, 21 (2007)); <u>see also</u> <u>Atlantic Pier Assocs.</u>, 647 F.Supp.2d at 489 ("[B]ecause there is no conflict between the application of the parol evidence rule

under Pennsylvania and New Jersey law, the Court will . . . presume the law of the forum state, Pennsylvania, controls.").

### b.       *Application of Pennsylvania Law*

SoftCare argues that MTBC will not be able to plead all the elements of fraud because MTBC cannot establish that it reasonably relied on statements made by SoftCare.  Under Pennsylvania law, MTBC is not allowed to introduce parol evidence of representations made prior to signing the contract because the Asset Purchase Agreement contains an integration clause and a clause explicitly denying reliance on any representations or warranties outside of the Agreement.  See Doc. No. 51, Ex. A §§ 1.15, 3.3.  As such, MTBC will not be able to establish that there was a representation made outside the contract, because any representations made outside the contract would be parol evidence.  Additionally, MTBC will also not be able to establish justifiable reliance because Agreement expressly denies reliance on representations outside of the Agreement.[9]  Because MTBC cannot establish that there were representations made outside of the contract which it justifiably relied on, MTBC is unable to state a claim for fraud under Pennsylvania law.

MTBC acknowledges in its reply brief (Doc. No. 53) that the Agreement limits the representations and warranties to the four corners of the document, but argues that under

---

[9] MTBC also cannot bring a claim for fraud for breaches of representations contained within the Agreement because of the gist of the action doctrine.  If any of the representations covered by the contract are breached, MTBC has a cause of action for breach of contract, not fraud.  Unfortunately for MTBC, the parties agreed that indemnification was to be the sole remedy for breach of contract.  This is likely why MTBC is trying to recover under fraud in the inducement.

<u>Dayhoff, Inc. v. H.J. Heinz Co.</u>, there is an exception to the parol evidence rule barring consideration of prior representations when the representations were fraudulently omitted from the contract. 86 F.3d 1287, 1300 (3d Cir. 1996). However, this exception applies to claims for fraud in the execution, not fraud in the inducement. <u>Id.</u> ("Fraud in the execution applies to situations where parties agree to include certain terms in an agreement, but such terms are not included . . . Parol evidence is admissible in such a case only to show that certain provisions were supposed to be in the agreement but were omitted because of fraud, accident, or mistake."). MTBC has not pled fraud in the execution, so the Court need not consider this exception.

Based on all the foregoing, I will deny MTBC's motion to amend its cross-claims. Though MTBC has pled fraud with the heightened particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, MTBC is unable to establish all the elements of fraud. Even assuming SoftCare did in fact make misrepresentations to MTBC to induce MTBC to sign the Agreement, MTBC will not be able to present evidence of those misrepresentations due to the parol evidence rule. Furthermore, the Agreement between MTBC and SoftCare expressly denies reliance on any representations not included in the Agreement. Because MTBC will not be able to prove reliance on the alleged misrepresentations made by SoftCare, MTBC fails to state a claim for fraud and its Amended Cross-Claims are futile.

### C. *Motion to File an Answer Analysis*

MTBC also moves for leave to file an answer to SoftCare's Counterclaims (Doc. No. 49) under Federal Rule of Civil Procedure 6(b). MTBC argues that it has met the

standard of excusable neglect because it was without in-house litigation counsel from June 30, 2016 to September 6, 2016, during which time SoftCare filed its Counterclaims and requests for admissions and interrogatories.[10]  During that time period, MTBC was represented by local counsel, Jonathan Huerta, whose main role was to serve as *pro hac vice* sponsor.  MTBC's senior corporate counsel, Shruti Patel, had knowledge of SoftCare's Counterclaims but certifies that she did not understand the litigation deadlines, as she is not admitted in the Eastern District of Pennsylvania and does not manage MTBC's litigation as part of her employment.  MTBC did not hire its new in-house litigation counsel until September 6, 2016.  MTBC also asserts that filing an answer will not prejudice SoftCare.

SoftCare opposes MTBC's motion, arguing that MTBC has not met the standard for excusable neglect and instead has committed ordinary professional neglect.  SoftCare argues that ignorance of the rules of procedure do not excuse counsel's failure to investigate or confirm the deadlines with outside counsel.  Additionally, SoftCare notes that MTBC, even without in-house litigation counsel, 1) filed an opposition to SoftCare's motion to dismiss; 2) participated in a Rule 26 conference; 3) participated in a Rule 16 conference; 4) filed a motion for leave to amend its counterclaims against SoftCare; 5) served discovery requests on Moore eye; and 6) served discovery requests on SoftCare. These tasks were accomplished with help from local counsel Huerta.  Given that MTBC was able to accomplish those tasks without in-house litigation counsel, SoftCare argues

---

[10] Along with its motion, MTBC attached an affidavit from its senior corporate counsel, Shruti Patel (Doc. No. 55-3).

that MTBC's failure to answer SoftCare's counterclaims cannot constitute excusable neglect. SoftCare does not respond to MTBC's assertion that allowing MTBC to file an answer will not prejudice SoftCare. MTBC disputes SoftCare's characterization of the work done while MTBC was without in-house counsel, but does confirm that MTBC sought help from Huerta during that period.

## 1.    Legal Standard – FRCP 6(b)

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, a court may, for good cause, grant a motion to extend the time for an act to be done after the time has expired if the party failed to act because of excusable neglect. The Third Circuit has held that a district court must make a finding of excusable neglect under the factors set forth by the Supreme Court in Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993) before permitting an untimely motion under Rule 6(b)(1)(B). Drippe v. Tobelinski, 604 F.3d 778, 784-85 (3d Cir. 2010). A district court that finds excusable neglect without reference to the Pioneer factors abuses its discretion. Ragguette v. Premier Wine & Spirits, 691 F.3d 314 (3d Cir. 2012). Furthermore, the Third Circuit has "imposed a duty of explanation on District Courts when they conduct [an] 'excusable neglect' analysis." In re Cendant Corp. PRIDES Litig., 235 F.3d 176, 182 (3d Cir. 2000).

In Pioneer, the Supreme Court laid out four factors: 1) the danger of prejudice to the nonmoving party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted

in good faith.  Drippe, 604 F.3d at 785 (citing Pioneer, 507 U.S. at 395).  All factors must be considered and balanced; no one factor trumps the others.  In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir. 2005) (citing George Harms Constr. Co. v. Chao, 371 F.3d 156, 164 (3d Cir. 2004)).  Yet "the lack of any prejudice to the [opposing party] or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting [a] tardy claim."  Pioneer, 507 U.S. at 398.

2.     **Analysis**

The Pioneer factors are mixed when it comes to MTBC.  The first, second, and fourth Pioneer factors weigh in favor of allowing MTBC to file an answer.  First, it does not appear that there is prejudice to the nonmoving party.  SoftCare does not claim that they suffered any prejudice and does not respond at all to MTBC's argument that the only prejudice SoftCare may have suffered is the loss of an advantageous position.  Additionally, SoftCare did not file for a default judgment against MTBC after MTBC failed to answer SoftCare's Counterclaims.  Second, the length of the delay is insignificant and did not impact the judicial proceedings.  The Answer to SoftCare's Counterclaims was due on August 15, 2016.  MTBC filed its motion for leave to file an answer on Sept 30, 2016.  The delay in time is under two months, which the Third Circuit has found is insignificant as a matter of law.  In re Cendant Corp., 235 F.3d at 183 ("[T]he length of delay is considered in absolute terms . . . a two-month delay [is] insignificant as a matter of law.") (citing In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 130 (3d Cir. 1999)).  There is also no evidence that the delay in filing has had a

significant impact on the judicial proceedings in this case. Lastly, there is no evidence that MTBC moved in bad faith in filing its motion for leave to file an answer.

However, the third <u>Pioneer</u> factor weighs against MTBC. While it is true that MTBC was without in-house litigation counsel, it continued to be represented by local counsel as well as in-house corporate counsel. MTBC requested help from and continued to communicate with Huerta during the period of time it was without in-house litigation counsel. While Patel states that she was unaware of the deadlines for filing an Answer, ignorance of the rules does not usually constitute excusable neglect. <u>Murdock v. Borough of Edgewater</u>, 600 Fed.Appx. 67, 72 (3d Cir. 2015) (citing <u>Pioneer</u>, 507 U.S. at 392). The delay in this case was avoidable and within Patel's control, as she could have asked Huerta to clarify the deadlines for responding. <u>See</u> <u>In re Am. Classic Voyages Co.</u>, 405 F.3d 127, 134 (3d Cir. 2005) (imputing negligence of a party's counsel to the party) (citing <u>Pioneer</u>, 507 U.S. at 397). Additionally, while Patel states that she was not responsible for coordinating the litigation of the firm, MTBC clearly could have requested help from outside counsel, which it did at other times throughout the period it was without litigation counsel.

Based on all the foregoing, I will grant MTBC's motion to file an answer as the first, second, and fourth <u>Pioneer</u> factors support a finding of excusable neglect. <u>See</u> <u>George Harms Const. Co. v. Chao</u>, 371 F.3d 156, 164 (3d Cir. 2004) ("The lack of any prejudice to the opposing party or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim.") (citing <u>Pioneer</u>, 507 U.S.

at 398).  Although the third <u>Pioneer</u> factor weighs against MTBC, the Court

should not weigh this factor too heavily at the expense of the other <u>Pioneer</u> factors.

<u>Id.</u> ("Under <u>Pioneer</u>, a court must take into account all relevant circumstances . . .

the 'control' factor does not necessarily trump all other relevant factors.").

### D.   *Motion to Withdraw its Admissions Analysis*

Lastly, MTBC has moved to withdraw its admissions under Federal Rule of Civil

Procedure 36(b).  MTBC contends that withdrawal of its admissions will not prejudice

SoftCare, but only requires SoftCare to prove its case on the merits.  SoftCare opposes

this motion, arguing that MTBC has admitted the facts sought by SoftCare through

discovery by failing to answer SoftCare's counterclaims.  SoftCare also argues that it will

be prejudiced if the admissions are withdrawn because they will be unable to address the

deficiencies in MTBC's proposed denials as the written discovery deadline had ended

and the deadline for taking depositions was quickly approaching at the time the motion

was filed.  SoftCare does not cite any case law in support of its arguments.

MTBC replies that if it is granted leave to file an Answer to SoftCare's

counterclaims, it will not have admitted the allegations in SoftCare's counterclaims.

MTBC also argues that SoftCare fails to allege what additional interrogatories, document

requests, or further requests for admission would be required if the admissions were

withdrawn.  Lastly, MTBC notes that SoftCare had possession of MTBC's response to

admissions since September 21, 2016, and therefore had time to serve additional demands

prior to the discovery deadline.

### 1. **Legal Standard – FRCP 36**

Under Rule 36(a)(3) of the Federal Rules of Civil Procedure, a request for admission is deemed admitted if a party does not respond within 30 days. Courts may, however, permit withdrawal of the admission if: 1) doing so would "promote the presentation of the merits of the action"; and 2) "the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The prejudice contemplated by Rule 36(b) must be more than that the party who obtained the admission now has to convince the jury of its truth. <u>Gwynn v. City of Philadelphia</u>, 719 F.3d 295, 298-99 (3d Cir. 2013) (citing <u>Bergemann v. United States</u>, 820 F.2d 1117, 1121 (10th Cir. 1987)). Additionally, courts may consider other factors outside of the two requirements of Rule 36(b), such as "whether the moving party can show good cause for the delay," but courts are not required to do so. <u>Id.</u> (internal citations omitted).

Other courts in the Eastern District of Pennsylvania have allowed parties to withdraw admissions even when the failure to timely respond was the fault of counsel. <u>See, e.g.</u>, <u>Bradley v. Greyhound Lines, Inc.</u>, Civ. No. 11-5715, 2012 WL 2343311, at *3 (E.D. Pa. June 19, 2012) (Baylson, J.) (granting plaintiff's motion to withdraw admissions because there is no prejudice to the defendant, even though the failure to timely respond could have been avoided if plaintiff's counsel maintained an adequate intake and filing system for discovery motions).

## 2.    **Motion to Withdraw Admissions Analysis**

MTBC seeks to withdraw five out of six admissions (the sixth being partly

admitted) and have its denials deemed timely (Doc. No. 55-2).  These admissions are:

> 1)  That MTBC was aware that all or some portion of the Moore Eye Receivables
> might not be collectible at the time MTBC entered into the Asset Purchase
> Agreement;

> 2)  That at the time of contracting, MBTC intended to renegotiate or alter the
> contractual relationship with Moore Eye;

> 3)  That MTBC used to intended to use a portion of the Moore Eye Receivables as
> a bargaining chip to renegotiate or alter its contractual relationship with Moore
> Eye;

> 4)  That MTBC terminated its relationship with Moore Eye prior to collecting any
> Moore Eye receivables; and

> 5)  That MTBC has not paid SoftCare all amounts due for purchase price
> adjustments under the Asset Purchase Agreement.

Because these admissions are material in the suit between MTBC and SoftCare,

especially with regards to SoftCare's Counterclaims against MTBC, withdrawal of the

admissions would promote the presentation of the merits of the case, which satisfies the

first requirement of Rule 36(b) of the Federal Rules of Civil Procedure.

There is also no evidence of prejudice against SoftCare if the admissions are

withdrawn.  SoftCare had time to submit additional discovery requests when it was

served with MTBC's denials.  Additionally, this Court extended the discovery deadline to

May 15, 2017.  See Gwynn, 719 F.3d at 298-99 (extension of discovery deadline

adequately addressed counsel's concern that they had not moved to compel discovery in

reliance on the admissions).  Lastly, SoftCare has not shown that they relied on the supposed admissions at the time that these motions were filed.  See <u>Alers v. City of Philadelphia</u>, Civ. No. 08-4745, 2009 WL 2776384, at *6 (E.D. Pa. Aug. 26, 2009) ("[The nonmoving party has] failed to show that they have relied on the supposed admissions at issue to their detriment in this litigation . . . withdrawal of [the] admissions will not render [the nonmoving party] any less able to prove the admitted matters (*i.e.*, their case).").

Based on all the foregoing, I will grant MTBC's motion to withdraw its admissions and have its denials deemed timely because both prongs required by Rule 36(b) of the Federal Rules of Civil Procedure are met here.

## IV.    CONCLUSION

For the reasons described above, I will deny MTBC's motion to Amend its Counter-claims to include a fraud claim because the claim is futile. I will grant MTBC's motion for leave to file an Answer to SoftCare's Counterclaims and Withdraw its Admissions, as MTBC has met the standard for excusable neglect and withdrawing the admissions will not prejudice SoftCare.